UNITED STATES DISTRICT

COURT DISTRICT OF OREGON

EUGENE DIVISION


MERRY L.,[1]

                Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 6:24-cv-01600-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Merry L. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

**SEQUENTIAL ANALYSIS AND ALJ FINDINGS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 1, 2018, through her date last insured, Sep 31, 2028. Tr. 19.

At step two, the ALJ determined plaintiff suffered from the following severe impairments: generalized anxiety disorder, persistent depressive disorder, and posttraumatic stress disorder. Tr. 19.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 20. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the capacity to perform the full range of work at all exertional levels with the following nonexertional limitations: she can persist at simple, routine, repetitive tasks, can make simple work-related decisions, perform work with few if any changes in the workplace, and no assembly-line pace work. Tr. 22.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 27. However, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including janitor, auto detailer, office helper. Tr. 28. Thus, the ALJ concluded plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly discounting her symptom testimony, (2) rejecting the medical opinions of Lindsey King, Ph.D.; Byron Elliott, PMHNP; and Rachel Dyer, LPC; and (3) rejecting the lay witness testimony in the case record.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent*

with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified that she began having panic attacks in 2018. Tr. 44. She was a teacher at the time and canceled out of her teaching contract less than halfway through the school year. Tr. 44. Since that time, she has worked as a private tutor for three families and works six to eight hours a week. Tr. 53-54. According to plaintiff, the families she tutors for are understanding of her mental health issues and allow her to cancel when she is unable to work. Tr. 53.

Plaintiff lives with her husband and two roommates. Tr. 39. She testified that she drives rarely, and only when she needs to go somewhere, such as to her tutoring appointments or the grocery store. Tr. 39-40. She takes Celexa regularly to treat her symptoms and lorazepam as needed, when symptoms become overwhelming. Tr. 40, 47. She attends mental health therapy once a week. She stated that she used to keep guns in the house, but had stopped doing so as her symptoms worsened, as she was concerned for self-harm. Tr. 49.

5 – OPINION AND ORDER

Plaintiff testified that conflicts and being around other adults in social situations trigger her panic attacks. Tr. 56. She prefers not to go places unless accompanied by her husband. Her husband reminds her to take her medication, helps to prepare food for her, and checks in on her while he is at work to make sure she is attending to basic self-care such as eating regularly. Tr. 57.

The ALJ found plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the clinical evidence and diagnostic findings in the record. Tr. 26. Specifically, the ALJ noted that plaintiff receives conservative treatment and has never sought or been referred to more intensive, inpatient treatment. Tr. 26. Additionally, the ALJ found plaintiff's statements were inconsistent with her ability to drive and provide tutoring services to children. Tr. 26.

### A.    Conservative Treatment

The ALJ noted that plaintiff treated her depression and anxiety with Celexa, lorazepam, and CBD gummies which "is conservative treatment for her alleged disabling symptoms." Tr. 24. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751; *see also Smartt*, 53 F.4th 500. Additionally, the ALJ pointed out that plaintiff's primary care doctor described plaintiff symptoms were "stable on medication." Tr. 24 (citing Tr. 309, 355, 457). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The record supports the ALJ's conclusion that plaintiff received and continues to receive conservative treatment for her symptoms. Additionally, treatment records show that plaintiff's

course of treatment is effective at reducing her symptoms. For example, plaintiff's records show she receives Celexa and takes lorazepam "as needed" to control panic attacks. Tr. 309. In April 2018, plaintiff reported to providers that she used lorazepam "rarely." Tr. 335. In August 2018, plaintiff attempted to quit Celexa, but experienced increased symptoms of anxiety and depression. Tr. 332. She told providers she wanted to be off the medication but might need to "wean down a bit" to "avoid withdrawal symptoms." Tr. 332. In 2019, plaintiff reported that she stopped taking Celexa and was using a marijuana tincture and it was "working well." Tr. 455.

In 2022, plaintiff's symptoms worsened, and she was again prescribed Celexa; providers noted her symptoms "significantly improved." Tr. 425.The record shows that plaintiff's symptoms continued to improve, and providers recommended she "continue with present care." Tr. 432. In 2023, plaintiff reported to providers that she had only needed lorazepam once "since going on the low-dose of Celexa." Tr. 428. In October 2023, she reported her medications were fine and she was doing "ok" using Celexa, lorazepam, and CBD gummies. Tr. 517.

In sum, the ALJ did not err in concluding plaintiff's treatment was routine and conservative, and that plaintiff's symptoms improved with effective treatment.

## B.    Objective Medical Evidence

The ALJ cited plaintiff's statements that she "becomes overwhelmed after no more than three hours of work and the residual effects of panic attacks last for days" as being inconsistent with treatment records that failed to document this level of symptom severity. Tr. 26. By way of example, the ALJ noted that plaintiff had consistently normal mental status exams. Tr. 23, citing Tr. 415-16, 518, 528, 604, 610. Moreover, the ALJ pointed to counseling statements that plaintiff's "chief complaint was "looking for a diagnosis of PTSD." Tr. 23, citing Tr. 517, 525, 603, 609, 615. The ALJ's reasoning as to normal objective evidence, including normal mental

status exams, is a clear and convincing reason to discount plaintiff's testimony. Presumably, if plaintiff were experiencing debilitating panic attacks every day, medical providers would note some signs of that level of distress on examination. There is no such evidence in the record, although plaintiff was occasionally noted to appear anxious. *See* Tr. 424, 426, 428. 431-32, 453, 461, 470, 518, 528, 604, 610, 616.

### C.    Daily Activities

The ALJ found plaintiff's statement that she "could not work more than eight hours a week or attend work on a consistent basis" was inconsistent with plaintiff's ability to drive to her tutoring clients' homes and tutor children "for at least two hours per child." Tr. 26. Moreover, the ALJ considered statements as to the limiting effects of her symptoms to be inconsistent with daily activities including preparing simple meals, reading, coloring, playing video games, driving and shopping. Tr. 26. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. § 404.1529(c)(3)(i). The Ninth Circuit has found that activities such as using public transportation, shopping, preparing meals, performing household chores, performing personal care, socializing with friends, and watching television and playing video games for sustained periods may undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded plaintiff's claims were contradicted by her activities. For example, on her function report, plaintiff noted she goes outside "5-10 minutes a few times a

week; none on a bad day." Tr. 232. In contrast, she testified that she drives every week to her tutoring clients, she drives to the grocery store as needed, she shops for household necessities and hobby supplies once a week. Tr. 39, 232. She told providers she enjoyed organic farming as a hobby and hoped to market produce at some point. Tr. 50, 307, 445. Moreover, despite claims of isolating and not getting along well with others, the ALJ pointed out that plaintiff maintained a polyamorous relationship for at least two years. Tr. 20, citing 233-34, 525. Considering plaintiff's testimony as to her debilitating symptoms, the ALJ's conclusions are a reasonable reading of the record.

In sum, the ALJ provided clear and convincing reasons for discounting plaintiff's symptom testimony, and supported those reasons with substantial evidence.

## II.    Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's

policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a),

(c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most

important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability means the extent to which a medical source supports the medical opinion by

explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–

92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a

medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical

sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain

how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a),

(b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7

(D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were

considered, as appropriate, including relationship with the claimant (length, purpose, and extent

of treatment relationship; frequency of examination); whether there is an examining relationship;

specialization; and other factors, such as familiarity with other evidence in the claim file or

understanding of the Social Security disability program's policies and evidentiary requirements."

*Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D.

Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other

secondary medical factors [if] they find that two or more medical opinions about the same issue

are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL

6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### A.    Lindsey King, Ph.D.

In October 2022, Dr. Lindsey King met with plaintiff and conducted a consultative psychological examination at the request of the agency. Tr. 411-18. Dr. King noted plaintiff was cooperative and engaged, with euthymic mood and affect. Tr. 414. Plaintiff maintained appropriate eye contact throughout the evaluation, "her appearance was well maintained, and she was dressed appropriately for the season and situation." Tr. 414. Based on the examination, Dr. King rated plaintiff as markedly limited in her ability to understand, remember, or apply information, markedly limited in her ability to interact with others, markedly limited in her ability to concentrate, persist, or maintain pace, and markedly limited in her ability to adapt and manage herself. Tr. 416-17.

The ALJ found Dr. King's opinion unpersuasive because "she exclusively cited the claimant's detailed self-report of abilities, specifically the claimant's descriptions of her "good" and "bad" days as the basis for her opinion." Tr. 24. The ALJ also found Dr. King's opinion was inconsistent with plaintiff's history of conservative treatment, including "no evidence of inpatient treatment, outpatient partial-hospitalization, or emergency treatment for acute psychiatric symptoms." Tr. 24-25.

Plaintiff argues the ALJ erred in rejecting Dr. King's opinion, noting that psychiatric diagnoses will always be reliant in part on a patient's self-reports. Pl.'s Br. 6, citing *Buck v.*

*Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). That may be the case, but the record

demonstrates that Dr. King quoted and relied only on plaintiff's self-reports in her opinion. For

example, plaintiff's mental status exam results were normal, including her memory, thought

content and thought process. Tr. 415. Despite these normal objective findings, Dr. King

concluded plaintiff was markedly impaired in every functional domain. Tr. 416-17. Every

limitation Dr. King identified included quotations of plaintiff's own symptom descriptions,

without reference to normal objective findings, treatment records, or plaintiff's conservative and

routine course of treatment. Given the normal objective testing results, and other evidence in the

record, the ALJ's conclusions as to Dr. King's medical opinion are reasonable.

### B.    Byron Elliott, PMHNP

In December 2023, Byron Elliott, PMHNP, filled out a medical opinion form in support

of plaintiff's disability claim. Tr. 624-31. Elliott explained that he began treating plaintiff in

October of 2023, meeting with her every four weeks for medication management and psychiatric

care. Tr. 624.  Elliott opined that plaintiff was extremely limited in her ability to understand,

remember, and carry out simple instructions, extremely limited in her ability to make judgments

on simple work-related decisions, extremely limited in her ability to understand, remember, and

carry out complex instructions, and markedly limited in her ability to make judgments about

complex work-related decisions. Tr. 628. Elliott opined that plaintiff would miss more than four

days of work per month. Tr. 630.

The ALJ found Elliott's opinion unpersuasive because there is "no sufficient objective

evidence in the record, or his own treatment notes, to support this degree of limitation in

functioning." Tr. 25-26. The ALJ further noted that Elliott's opinion regarding the extreme "level

of limitation . . . .with respect to completing simple tasks is completely unsupported by the

record as the claimant[] admits that she is able to prepare simple meals, read fiction, color, play video games, and watch television even on bad day" and "she testified that she is able to drive a car and tutor children in reading and math for the last two to three years despite only working part-time." Tr. 26.

The ALJ's conclusions are supported by substantial evidence, given that the degree of limitations opined by Elliott are contradicted by plaintiff's own testimony regarding her level of functioning. Tr. 233. As the ALJ pointed out, an extreme limitation, according to the medical opinion form that Elliott filled out, is defined as having "no useful ability to function" in a particular domain. The ALJ observed that, even on bad days, plaintiff retains more functionality than the opinion form indicates. Tr. 233. Elliott's treatment notes consistently reflect normal objective findings, which is inconsistent with plaintiff's claims of daily panic attacks and debilitating symptoms. Tr. 518, 528, 610, 616. Moreover, Elliot advised that plaintiff's "outpatient treatment plan is adequate" and recommended that plaintiff continue her current course of treatment. Tr. 530.

### C.    Rachel Dyer, LPC

In August 2022, Rachel Dyer, LPC, provided a written statement in support of plaintiff's disability claim. Tr. 373. Dyer explained that she had provided therapy services to plaintiff since February 2022. Tr. 373. Dyer opined that plaintiff reported "disrupted focus and concentration, chronically interrupted motivation, fatigue, brain fog, irritability, mood swings, difficulty identifying or regulating emotions, chronic anxiety, depression, and panic attacks." Tr. 373. Dyer noted plaintiff presented as "overwhelmed" with varying degrees of energy, and that she lacked the capacity to "self-regulate and tolerate stress." Tr. 373.

In November 2023, Dyer provided an updated statement, again supporting plaintiff's disability claim. Tr. 593. Dyer reported that plaintiff continues to experience symptoms consistent with PTSD, including "emotional flashbacks, issues with intrusive anxiety and panic, difficulties with self-regulation when triggered to past trauma, intense mood[] swings, and functional impairment." Tr. 593. Dyer opined that plaintiff endorses "emotional overwhelm" which "impairs her executive functioning associated with organizing and following through on tasks, focus, concentration, and memory." Tr. 594.

The ALJ summarized Dyer's statements, noting neither statement was a medical opinion within the meaning of the Act. *See* 20 C.F.R. § 404.1513(a)(2) (a medical opinion is a statement from a medical source about what a claimant can do despite her impairments). Specifically, the ALJ stated that Dyer "did not include an opinion on the claimant's ability to function in a work environment." Tr. 25. Accordingly, the ALJ did not articulate any findings as to the supportability and consistency of Dyer's opinions. Tr. 25.

Plaintiff argues the ALJ erred in concluding Dyer's statements were not medical opinions because Dyer "described impairment-related cognitive limitations" in plaintiff's "memory and ability to follow through on tasks, maintain focus and concentration, and cope with stressors in a vocational setting." Pl.'s Br. 12. However, Dyer failed to provide any concrete limitations that the ALJ could consider in evaluating plaintiff's functionality. For example, Dyer's statements indicating plaintiff has impaired executing functioning that impacts her memory, concentration, and follow-through provide little guidance as to what degree plaintiff is actually impaired. *See* Tr. 594. And conclusory statements such as that plaintiff's symptoms will "impact work performance" give no indication as to what those impacts will be. Tr. 594. More specific information as to what plaintiff can—and by extension, cannot—do in the course of a normal

workday is required before the ALJ can articulate decisions regarding the supportability and consistency of that information. The ALJ was thus not obligated to evaluate Dyer's statements under the same criteria as a true medical opinion.

## III.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, ALJ are not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine v. Commissioner*, 574 F.3d 685, 694 (9th Cir. 2009). But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's husband and roommate provided lay witness statements as to plaintiff's functionality. Tr. 237-44, 274, 275. The ALJ "considered the supportive statements and

observations" of the lay witnesses "concerning [plaintiff's] impairments and associated

decreased work capacity when determining the . . . functional capacity." Tr. 21. The ALJ made

no further comments as to what extent the lay witnesses' statements were accepted or rejected.

Any error by the ALJ in failing to further address the lay witness statements is harmless because

the lay witnesses alleged similar limitations regarding plaintiff's mental health symptoms as

those in plaintiff's own testimony, which the ALJ properly rejected. The ALJ's reasons for

rejecting plaintiff's testimony apply with equal force to the lay witness testimony. *Molina*, 674

F.3d at 1117, 1122.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is AFFIRMED and this

case is DISMISSED.

IT IS SO ORDERED.

DATED February 20, 2026.

<u>/s/ Youlee Yim You</u>
Youlee Yim You
United States Magistrate Judge